UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PIO MISAEL FUGON

      Petitioner,

v.

JANET NAPOLITANO, Secretary, Department of Homeland Security; JOHN MORTON, Director, Immigration and Customs Enforcement; REBECCA ADDUCCI, Director, Detroit Immigration and Customs Enforcement,

      Respondents.

Case number 10-13935
Honorable Julian Abele Cook, Jr.
Mag. Judge Mark A. Randon

ORDER

This case involves an effort by the Petitioner, Pio Misael Fugon ("Fugon"), who is a citizen of Honduras, to prevent the Respondents from removing him from the United States. Fugon also seeks to enjoin the Respondents from, among other things, moving his location without prior notification to his counsel. For the reasons that have been set forth below, Fugon's petition and motion for an injunction will be denied.

I.

In an order on October 5, 2005, the Court summarized the factual and legal background underlying Fugon's claim in the following manner:

> On Saturday October 2, 2010, the Petitioner, Pio Misael Fugon ("Fugon"), filed an emergency motion for a writ of habeas corpus, which if granted, would result in a stay of any attempts by the Respondents[1] to deport him to his home country of Honduras.

---

[1] All of the named Respondents are official representatives of the United States Department of Homeland Security and the United States Immigration and Customs Enforcement.

1

As the basis for his request, Fugon asserts that he is fearful of being immediately removed from the United States by officials with Immigration and Customs Enforcement in the absence of a fair hearing. Fugon also urges the Court to preclude his removal as a Honduran national from this country at this time because he has applied for a now-pending "Temporary Protected Status" pursuant to the Immigration and Nationality Act.[2] *See,* Designation of Honduras Under Temporary Protected Status*,* 64 Fed. Reg. 524 (January 5, 1999) (making "Temporary Protected Status" available to Honduran nationals in 1999 based on environmental disasters and a resulting disruption of living conditions). He further avers that the "Temporary Protected Status" for citizens of Honduras has been repeatedly made available to Honduran nationals through January 5, 2012. *See* Extension of the Designation of Honduras for Temporary Protected Status, 75 Fed. Reg. 24734 (May 5, 2010). Citing 8 U.S.C. § 1254a(a)(4) and 8 C.F.R. §§ 244.5 and 244.10(e), he posits that those persons who have applied for and presented a *prima facie* case for eligibility for "Temporary Protected Status" should not be removed until a decision is made on their application for relief by the United States Government. Thus, it is Fugon's contention that his removal from this country without a fair hearing would cause the Respondents to be in "clear violation" of existing federal law.

In its order of October 5th, the Court directed the Government to (1) file a written response to Fugon's request for relief, and (2) cease any additional efforts to remove him from the United States until further notice. Acting upon this directive, the Government filed a response within ten days thereafter and agreed not to undertake any action that would seek the removal of Fugon from the United States pending a final decision by this Court..

An examination of this Governmental response discloses some additional facts, all of which appear to be relevant to Fugon's now-pending motion. First, according to documents that were prepared by the U.S. Citizenship and Immigration Services (USCIS), Fugon was granted a "conditional permanent resident" status on July 30, 1997. Nearly two years later, he and his spouse filed a joint petition which sought to remove the conditional aspects of his resident status in this country. However, the USCIS records indicate that his wife subsequently withdrew her support

---

[2] 8 U.S.C. § 1101 et seq.

2

of this petition which presumably underscored the existence of marital discord in the Fugon family.³

On May 21, 2007, the USCIS rejected Fugon's attempt to obtain a waiver of the requirement that the removal petition must be filed jointly. The decision by the USCIS was based upon Fugon's failure to persuade the agency "that the marriage was not entered into for the purpose of procuring [Fugon's] status as a permanent resident, or that the termination of [his] status and removal from the United States would result in extreme hardship." (5/1/09 USCIS Letter, Exhibit A to Government's Response). Ultimately, on September 29, 2008, an Immigration Judge - believing that Fugon had entered the United States on the basis of a fraudulent marriage - ordered his removal. However, as indicated in the Court's October 5th order, Fugon then applied for Temporary Protected Status.

According to the Government, USCIS notified Fugon of its intent to deny his application based on fraud and misrepresentation, and for his failure to file USCIS Form I-601, which is an Application for Waiver of Ground of Inadmissibility. Although the USCIS gave Fugon thirty-three (33) days to file the form, he did not do so and his application was deemed abandoned and therefore denied in a letter dated July 16, 2009. The removal order became final on July 19, 2010, when the Board of Immigration Appeals dismissed Fugon's appeal of the Immigration Judge's decision. Fugon notes that under 8 C.F.R. § 244.2(f)(2), he had until September 17, 2010⁴ to file a subsequent

---

³The USCIS file also revealed that Fugon's wife obtained a divorce on December 9, 2003.

⁴This date is sixty (60) days from the July 19, 2010 date upon which the Board of Immigration Appeals denied Fugon's application for Adjustment of Status. 8 C.F.R. § 244.2(f)(2).

3

TPS application, and that he did so on that exact date. The Government observes, however, that processing of that application was suspended for failure to pay the proper fee. To the Government's knowledge, there was also no documentation showing that a Form I-601 had been filed to support the subsequent application.

In his reply to the Government's response to his request for a writ of habeas corpus, Fugon notes that on October 5, 2010 – after this case was initiated – he paid the $80.00 fee that should have initially accompanied his September 17, 2010 application for TPS. He also claims that on October 13, 2010, he filed the requisite Waiver of Inadmissibility, Form I-601. Despite being on notice of the need for a waiver based on the denial of his earlier application, Fugon blames his inability to file the waiver form earlier on the Respondents' continued transfer of him and failure to notify his counsel of his whereabouts.

The Government challenges these assertions, arguing that Fugon made misrepresentations to this Court in an effort to obtain more time to file a proper TPS application, and thereby remain in the country. It concedes that because Fugon now appears to be *prima facie* eligible for TPS because he has filed a valid application, no steps will be taken to remove him. However, it claims to have lawful authority to detain Fugon while the TPS application is pending.

II.

As noted, the Government concedes that it will not attempt to remove Fugon from the country while his application for TPS is pending. Accordingly, the question of whether, in light of the REAL ID Act of 2005,[5] the Court has authority to review Fugon's attempt to challenge his

---

[5] REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 310-11 (codified in scattered sections of 8 U.S.C. § 1252)

4

removal is moot and will not be reviewed. For similar reasons, the Court will deny Fugon's request for a writ of habeas corpus. The separate motion for injunctive relief is also denied as moot inasmuch as information received from Fugon's counsel revealed that (1) counsel was entirely aware of Fugon's whereabouts, (2) she had spoken with Fugon by phone on October 14th, (3) a member of her staff had successfully visited Fugon at the Macomb County jail on October 13th, obtained Fugon's signature on the Attorney Appearance form, and faxed it to officials at Immigration and Customs Enforcement (ICE), and (4) despite these developments, counsel failed to update the Court with this information, which was relevant to her October 11th motion for permanent injunction.

However, there is a remaining question of whether the Government may still lawfully detain Fugon while his TPS application is pending. The Government acknowledges that an individual with a pending TPS application who is *prima facie* eligible for that status under 8 U.S.C. § 1254a(a)(4)(b) is entitled to the benefits identified at 8 U.S.C. § 1254a(a)(1), including protection from being removed from the United States. Nevertheless, the Government notes that § 1254a(a)(1) does not prohibit detention. In its view, since Fugon has an administratively final order of removal, his continued detention is authorized under 8 U.S.C. § 1231(a)(2) and is therefore lawful. The Government has indicated that ICE will release Fugon from custody if and when the I-601 waiver is granted.

The Government's position is legally correct. Fugon's order of removal became administratively final on July 19, 2010, when the Board of Immigration Appeals dismissed Fugon's appeal of the Immigration Judge's removal order. Pursuant to 8 U.S.C. § 1231(a)(1), the Government had 90 days, or until Sunday October 17, 2010 to remove Fugon from the country and

was authorized to detain him during that period. Of course, this Court entered a stay of his removal twelve days before the October 17th deadline expired. But had the Court chosen not to order a stay of his deportation, it is likely that – absent some other judicial intervention – Fugon would have been removed. Unless and until Fugon's application for Temporary Status is granted, it is reasonably foreseeable that removal proceedings will continue. For that reason, the Court believes that his continued detention at this juncture is authorized. *See generally, Zadvydas v. Davis,* 533 U.S. 678, 699 (2001) ("we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

III.

Therefore, for the foregoing reasons, the Petitioner's emergency petition for a writ of habeas corpus must be, and is, denied. Similarly, the Petitioner's motion for an injunction seeking access and notification to counsel must be, and is, denied.

IT IS SO ORDERED.

Dated: November 18, 2010             s/Julian Abele Cook, Jr.
Detroit, Michigan            JULIAN ABELE COOK, JR.
           United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 18, 2010.

           s/ Kay Doaks
           Case Manager